IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD GLOVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 2:23-cv-0463 |
| THE CHILDREN'S HOSPITAL OF | : | |
| PHILADELPHIA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT THE CHILDREN'S HOSPITAL OF PHILADELPHIA'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

HAMBURG LAW GROUP, PLLC
Neil J. Hamburg (Pa. Bar No. 32175)
Scott M. Lempert (Pa. Bar No. 76765
1 Franklin Town Blvd., Suite 1106
Philadelphia, PA  19103
Telephone: (215) 858-2225
Fax: (484) 534-8587
hamburgnj@hamburglawgroup.com
lempertsm@hamburglawgroup.com

*Attorneys for Defendant
The Children's Hospital of Philadelphia*

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION                                                        1

II.  FACTUAL ALLEGATIONS                                                2

     A.    CHOP's COVID-19 Vaccine Mandate                              2

     B.    Glover's Exemption Request and Appeal                        7

III. PROCEDURAL HISTORY                                                11

IV.  LEGAL STANDARD: RULE 12(b)(6) MOTION TO DISMISS                   11

V.   ARGUMENT                                                          12

     A.    Glover's Objections to Receiving the COVID-19 Vaccine Are    12
           Not "Religious" Beliefs Requiring Accommodation Under Title
           VII or the PHRA

VI.  CONCLUSION                                                        18

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981)                            14

*Aukamp-Corcoran v. Lancaster General Health*, No. 19-5734, 2022 WL 507479,          13, 18
at *3 (E.D. Pa. Feb. 18, 2022)

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)                               12

*Biden v. Missouri*, 142 S. Ct. 647, 653 (2022)                                          5

*Blackwell v. Lehigh Valley Health Network*, NO. 22-03360, 2023 WL 362392 at           17
*8 (E.D. Pa. Jan. 23, 2023)

*Fallon v. Mercy Catholic Med. Ctr. of Southeastern PA*, 877 F.3d 487, 490 (3d         13
Cir. 2017)

*Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 388 (M.D. Pa. 2021)               18

*Finkbeiner v. Geisinger Clinic*, 21-01903, 2022 WL 3702004, at *4 (M.D. Pa.           16
Aug. 26, 2022)

*Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-4024, 2021 WL 4399672            16
(E.D. Pa. Sept. 27, 2021)

*Mason v. Gen. Brown Cent. Sch. Dist.,* 851 F.2d 47, 51 (2d Cir. 1988)                 17

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d         12
Cir. 1993)

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 311-12 (3d Cir. 1999)     12

*Steinhardt Group Inc. v. Citicorp.*, 126 F.3d 144, 145 (3d Cir. 1997)                 12

*Ulrich v. Lancaster Gen. Health,* No. CV 22-4945, 2023 WL 2939585, at *6          13, 14, 17
(E.D. Pa. Apr. 13, 2023)

*United States v. Seeger*, 380 U.S. 163, 165 (1965)                                    14

*Wilkerson v. New Media Tech Charter Sch., Inc.,* 522 F.3d 315, 318-19 (3d Cir.        12
2008)

*Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)                                      14

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6) of the Federal Rules of Civil Procedure                    2

Fed. R. Civ. P. 8(a)(2)                                                 11

**STATUTES**

42 U.S.C. § 2000e(j)                                                    13

**FEDERAL REGULATIONS**

85 Fed. Reg. 15337 (Mar. 13, 2020)                                      2

86 Fed. Reg 61555, 61556 (Nov. 5, 2021)                                1, 4

86 Fed. Reg. at 61616-17 and 61574                                      5

## I.      INTRODUCTION

In 2021, Defendant The Children's Hospital of Philadelphia (CHOP) – like many healthcare employers across the United States, and for the benefit of its severely ill and immunocompromised children, their families and CHOP employees – implemented a policy requiring that its employees be vaccinated against COVID-19.[1] Plaintiff Donald Glover, who worked for CHOP as a biomedical tech supervisor, requested an exemption from that requirement, claiming that compliance would have violated, among other, admittedly more important secular reasons, his claimed Christianity-based objections to vaccination. CHOP denied his request, finding that his claimed religious-based objections to receiving the COVID-19 vaccination were not religious in nature.

Glover has filed this lawsuit claiming CHOP violated religious accommodation requirements under Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Those laws require that covered employers accommodate their employees' sincere religious beliefs, unless doing so would involve more than a *de minimis* imposition on the employer's operations.

As explained in more detail below, Glover's claims fail as a matter of law. Plaintiff's Complaint in this action, and his application for religious exemption submitted to CHOP attached to the Complaint, are sufficient to show that Glover's objections to receiving the COVID vaccine are not based on religious beliefs and therefore are not entitled to accommodation. Instead, his self-determined interpretation of selected bible verses expresses inaccurate medical beliefs about the vaccine, and his additional reasoning for refusing to comply with CHOP's vaccine mandate

---

[1] "COVID-19" stands for "Coronavirus disease 2019."  *See* 86 Fed. Reg 61555, 61556 (Nov. 5, 2021).

show that his objections are rooted in a scientific or medical belief, not religion. No additional discovery would assist the Court in ruling on this required element of his claim. As a result, the Court should grant this motion and dismiss Glover's Complaint with prejudice, in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     FACTUAL ALLEGATIONS

### A.     CHOP's COVID-19 Vaccine Mandate

On March 11, 2020, the World Health Organization declared COVID-19, a highly transmissible disease caused by a novel coronavirus, a global pandemic. That same week, then-President Donald J. Trump declared COVID-19 a national emergency. *See* 85 Fed. Reg. 15337 (Mar. 13, 2020). According to the United States Centers for Disease Control and Prevention ("the CDC"), COVID-19 has caused over 1.1 million deaths in the United States since early 2020.[2]

CHOP is one of the United States' premier providers of health care focused exclusively on children, with its main campus in Philadelphia and other locations in the Pennsylvania and New Jersey suburbs. CHOP serves a uniquely vulnerable patient population, including children with rare cancers and other conditions that leave them immunocompromised and unprotected. When CHOP implemented the mandate, many of its patients were too young to receive the vaccine, which underscored the need to ensure those who cared for them, and those who came in contact with those who cared for them, to be vaccinated.[3] Throughout the COVID-19 pandemic, CHOP has acted proactively with the paramount goal in mind to protect its pediatric patient population, their families, and all caregivers and staff.

---

[2] (*See* CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited May 12, 2023) (listing 1,127,928 "total deaths").

[3] Until June 2022, patients under five could not be vaccinated, and relied on the vaccination and safe practices of those around them to help ensure that they did not contract COVID-19.

CHOP's CEO, Madeline Bell, together with its Human Resources Department, communicated with staff frequently and in multiple ways about CHOP's response to the COVID pandemic and the steps that it has taken and continues to take to protect patients, families and staff. Once the COVID-19 vaccine became widely available and its efficacy established, CHOP – like other healthcare institutions, schools and businesses – made plans to adopt a COVID-19 vaccine mandate, which the CEO first announced in July, 2021. CHOP sped up its implementation of the vaccine mandate as the Delta variant gained traction in summer 2021.

On August 3, 2021, with the Delta variant surging, Ms. Bell issued a statement to all CHOP employees establishing a firm deadline of October 20, 2021, by which employees – healthcare and non-healthcare workers alike – had to be fully vaccinated or risk loss of their employment, unless they secured a medical or religious exemption. (*See* Complaint, Exhibit A, "We Must Act Now: Important Update on COVID-19 Vaccine Mandate.") Ms. Bell wrote, in part:

> As I wrote in yesterday's CEO message, safety is a top priority at CHOP. It's extremely important that we work together to keep our patients, families and each other safe. This is especially critical now, as we face a new challenge in the COVID-19 pandemic.
>
> The rapid spread of the Delta variant, which new research has shown is much more transmissible and contagious than previous strains of COVID-19, requires that we take urgent action to protect you and our community.

In announcing the accelerated timeline for the vaccine requirement, Ms. Bell noted:

> This decision, like all the other decisions we have made in response to the pandemic, is based on the most current information and data, including:
>
> - Majority of CHOP patients (>70%) are not yet eligible for vaccine
> - Internal data shows that the majority of past exposures at CHOP were employee to employee when community prevalence was high
> - Vast majority of COVID infections, and nearly all cases of severe disease and hospitalization in the community, are in unvaccinated persons
> - Strong safety and efficacy data of available COVID vaccines
> - Uncertainty in the date of full FDA approval for vaccines due to administrative delays

- Concern for development of future, potentially even more contagious variants, if the virus continues to spread.[4]

The last bullet point in CEO Madeline Bell's August 3, 2021, communication was especially prescient in light of the emergence of the highly contagious Omicron variant in December 2021. Omicron quickly surged world-wide and proved most severe and deadly among the unvaccinated. Fortunately, CHOP's workforce was fully vaccinated by that time and thus protected from severe disease.

CHOP's August 3, 2021 announced policy proved to be just ahead of the curve. On August 25, 2021, the city of Philadelphia's Department of Public Health announced a COVID-19 vaccine mandate for workers in city healthcare facilities (where most of CHOP's employees work). *See* Exhibit 1 at 1 ("Any individual who works for a Healthcare Institution (Healthcare Institution Worker) at a location where patients or clients receive healthcare related services, *regardless of whether that individual provides services to patients, must be fully vaccinated*") (emphasis supplied). Glover worked in CHOP's hospital building located in University City. Complaint at ¶¶ 2, 9.

Three months after CHOP announced its policy, the Centers for Medicare & Medicaid Services ("CMS") – a component agency of the United States Department of Health and Human Services – announced an interim final rule establishing COVID-19 vaccination requirements for staff employed at Medicare- and Medicaid-certified healthcare providers, including hospitals. *See* 86 Fed. Reg. 61555, 61561 (Nov. 5, 2021) ("In light of our responsibility to protect the health and safety of individuals providing and receiving care and services from Medicare- and Medicaid-certified providers and suppliers . . . we are compelled to require staff vaccinations for COVID-19

---

[4] Complaint, Exhibit A.

in these settings.").

Like CHOP's policy, Philadelphia's vaccine mandate and CMS's final rule required that all hospital staff undergo vaccination for COVID-19, unless granted an exemption due to medical contraindication or because of a sincere religious objection to the COVID-19 vaccines. *See* Exhibit 1 at 3 ("The Healthcare Worker or Healthcare Institution Worker may request an exemption by submitting a signed statement in writing that the individual has a <u>sincerely held religious belief</u> that prevents them from receiving the COVID-19 vaccination. Philosophical or moral exemptions are not permitted.") (emphasis in original); 86 Fed. Reg. at 61616-17 and 61574 (an institution may request the worker explain in the certification why the worker's religious belief prevents them from receiving the COVID-19 vaccine).   Early last year, the U.S. Supreme Court upheld CMS's final rule as an appropriate exercise of the agency's regulatory authority. *See Biden v. Missouri*, 142 S. Ct. 647, 653 (2022).

CHOP's COVID-19 vaccine mandate provided two types of exemptions from the vaccination requirement: a medical exemption and a religious exemption.[5] Relevant to the instant case, employees could be exempted by demonstrating that they harbor sincere religious objections to the available COVID vaccine.[6] As described in CHOP's Request for Religious Accommodation, the employee was required to complete a survey and encouraged to attach supporting documentation.[7] After submission, employee requests for exemption were processed according to the Human Resources Department's Standard Operating Procedure for religious exemptions.[8] CHOP warned its employees that if CHOP denied their request for a religious exemption, and the

---

[5] *See* Complaint, Exhibit A.
[6] *See* Complaint, Exhibit B.
[7] *Id.*
[8] *See* Complaint, Exhibit C ("SOP – Requests for Vaccine Related Religious Accommodations").

employee did not comply with the vaccine mandate deadlines, they would be subject to termination.[9]

As described in the Standard Operating Procedure ("SOP") document, after an individual submitted his or her completed forms seeking a religious exemption to the COVID-19 vaccine mandate, one or more members of a panel specially established under the supervision of Human Resources, comprised not only of Human Resources personnel, but also individuals concerned with Spiritual Care and Infection Prevention and Control, reviewed the request. At this stage, the Panel member would make a first-level determination whether the employee had demonstrated a sincerely held religious belief that conflicted with CHOP's COVID-19 vaccine mandate. If the Panel member found that the individual's application did not meet the criteria for a religious exemption, Human Resources would notify the employee, who then had three days to appeal to the next level of review. If the Panel member found that the employee had a sincerely held religious belief that conflicted with CHOP's vaccine mandate, Human Resources would work with the department and the employee on potential accommodations.

Individuals who appealed a first-level denial of an exemption request had the opportunity to describe in their own words the reason for their appeal, and to submit additional information if they wished to do so. CHOP retained the services of three retired judges as neutral adjudicators to address employee appeals. For each appeal, the assigned judge would get a complete copy of the materials the employee submitted at both the first level and on appeal, together with the Panel's decision.

A judge's appeal decision was considered final, and Human Resources communicated the decision promptly to the employee. If the judge upheld the Panel's denial of an exemption, the

---

[9] *See* Complaint, Exhibit B.

employee had the opportunity to become vaccinated, and if he or she chose not to do so, suspension of employment and termination followed.

### B.    Glover's Exemption Request and Appeal

CHOP hired Glover as a supervisor in the hospital's Biomedical Engineering Department on December 17, 2017.[10] At all times during Plaintiff's employment, CHOP required that all employees must undergo annual vaccination for seasonal influenza. *See* Exhibits 2 & 3. Glover complied with the requirement throughout his employment at CHOP, and never requested a religious exemption for the influenza vaccine, or indeed, any of the other vaccines required by CHOP.[11] But on September 9, 2021, Glover requested an exemption in response to CHOP's announcement of its COVID-19 vaccination mandate.[12]

Plaintiff's case followed the established pattern described above: he submitted a request for a religious exemption; a Panel member denied his request; he appealed; a retired judge considered his appeal and likewise denied it; and CHOP ultimately terminated his employment. Plaintiff then filed an EEOC charge and subsequently initiated this lawsuit by filing his Complaint with this Court on February 6, 2023.

In his initial request, Glover provided the following statement of his religious belief that allegedly precluded becoming vaccinated against COVID-19:

> It is my sincere religious belief that the whole world has entered a PROPHETIC TIMELINE based on the book of REVELATIONS 6th chapter and the 2nd verse, of the HOLY Bible, Which states "And I looked and behold, A white horse. He who sat on it had a BOW; and a CROWN was given to him, and he went out conquering and to conquer. The BOW is the vaccine and BOW translates to POISON in the GREEK. And CROWN is another word for CORONA as in CORONA VIRUS. Hence, I believe the vaccine to be TOXIC.[13]

---

[10] Complaint at ¶ 9.
[11] Complaint, Exhibit D at 1 (all grammatical and typographical errors in original).
[12] Complaint at ¶ 23.
[13] Complaint, Exhibit D at 1.

(Emphasis in original).

Plaintiff did not explain whether he came to the conclusion on his own or learned elsewhere that the verse from Revelations to which he referred actually means that the COVID-19 vaccine is toxic (*"The BOW is the vaccine and BOW translates to POISON in the GREEK. And CROWN is another word for CORONA as in CORONA VIRUS. Hence, I believe the vaccine to be TOXIC"*). Regardless of the origin of that purported interpretation, however, CHOP's COVID-19 vaccine mandate panelist who reviewed Glover's request denied it on September 22, 2021, stating: "The reason for the denial is information that was provided does not sufficiently demonstrate that the sincerely held religious belief prohibits vaccination."[14]

Plaintiff appealed the denial of his request for exemption, submitting three separate pages, none of which relied on his initial argument that the bible's Revelation passage means that the COVID-19 vaccine was "toxic" or "poison." On the first page of his appeal, Glover stated that he is a Christian and that the COVID vaccines violate the teachings of the bible because in the early "proof of concept" stage of mRNA vaccine development, testing utilized fetal cells, which he views as introducing "unclean food" into his body should he receive the vaccine:

> I sincerely believe that all human beings are made in the image of God, and this idea affirms the unique value of all human life. The sixth commandment says "You shall not murder" (Exodus 20:13), I believe that abortion is gravely wrong at every stage. Furthermore, I believe a physical body is given to each of us in our quest to fulfill our destiny and purpose here on earth. Specifically the New Testament teaches that: "Don't you know that you yourselves are Gods temple and that God's Spirit dwells in your mist?" (1 Corinthians 3:16) "If anyone destroys Gods temple, God will destroy that person; for Gods temple is sacred, and you together are that temple" (1 Corinthians 3:17).

> The Pfizer and Moderna COVID-19 vaccines in early development of mRNA vaccine technology used fetal cells for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-COV-2 Spike protein) or to Characterize the SARS-Cov-2 spike protein. The non replicating viral vector

---

[14] Complaint, Exhibit E.

vaccine produced by Johnson& Johnson required the use of fetal cell cultures, Specifically PER.CG, in order to produce and manufacture the vaccine.

This mechanism for altering my God given body is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Covid-19 vaccines to me are unclean. I believe in and follow God and the principles laid out in his Words and I have a deeply held belief that these vaccines violate them.[15]

While much of this text attempts to move away from Glover's initial position that the COVID-19 vaccine is toxic in order to assert more religious-sounding reasoning for refusing to comply with CHOP's vaccine mandate, the second part of Glover's appeal reveals a more secular and political motivation for the exemption request. In this section, Plaintiff cited legal and Constitutional bases for his refusal to take what he characterized as "an experimental vaccine." In an admitted nod to conspiracy theories, Complaint at ¶ 31, Glover said that something "sinister is going on" preventing the public from knowing about and being able to access "known and well documented treatments" that are effective against COVID-19, and significantly, that he is being discriminated against, not because of sincerely held beliefs rooted in religion are preventing him from receiving a vaccine, but because he refuses to take one that he finds "experimental:"

Just as important if not more, are my Constitutional rights as an American citizen, which affords me equal protection under the law according to the 14th Amendment. As important to me as my religious rights are, there will be no religious freedom if my constitutional rights are violated, which in this situation is the case. ***I'm being discriminated against because I refuse to take an experimental vaccine.***

***The refusal to make public, known and well documented treatments, that are extremely effective against COVID-19 suggest that something else sinister is going on***.[16]

---

[15] Complaint, Exhibit F at 1 (all grammatical and typographical errors in original).
[16] *Id.* at 2 (emphasis supplied).

The third part of Mr. Glover's appeal veered even further into the conspiracy theory arena with the following statement focusing on hydroxychloroquine, a medication which, by the time of Glover's appeal, was widely discredited:

> Additional facts why this dangerous vaccine is not needed:
>
> Even as early as March 2020, there were medications to prevent and treat Covid-19. The NIH discovered that hydroxychloroquine (HCQ) was effective against SARS (a coronavirus very similar to Covid-19) in 2005.[3] In March 2020, Prof. Didier Raoult, in France, was already using hydroxychloroquine to successfully treat Covid patients.[4],[5],[6]
>
> HCQ was being used successfully by doctors in many countries as a late March 2020, survey of doctors in 30 countries shows.[7] At the same time, America's Front Line Doctors,[8] and others[9],[10] began speaking out about what they were seeing and how they were treating patients. One doctor even found that ventilation, though widely used, was the wrong approach and was killing patients instead of saving them.[11]
>
> There was no reason for patients to die of Covid-19, even in March 2020, since there were successful treatments available. Today, there are more prophylaxis and treatment protocols that doctors are using to successfully preserve or recover their patients' health and keep them out of the hospital.[12]
>
> Encouraging, as well, are the CDC survival rates for Covid-19 patients. Survival rates by age range in the US as of September 30, 2020, were as follows: Ages 0-19: 99.997%, Ages 20-49: 99.98%, Ages 50-69: 99.5%, Ages 70+: 94.6%. The low fatality rates and successful treatment protocols mean that there should be no need for anyone to worry about dying from the coronavirus.
>
> Never before have we ever thought that healthy children can kill Grandma and we don't need to now.[17]

On October 11, 2021, one of CHOP's neutral adjudicators of appeals, Judge Patricia McInerney (retired), denied Plaintiff's appeal, stating:

---

[17] *Id.* at 3 (all grammatical and typographical errors in original).

The evidence provided does not support your assertion that your religious belief precludes you from obtaining the COVID-19 vaccine. You have expressed that your constitutional right not to take a vaccine you view as experimental, is more important than a religious objection. And that the refusal to make public known and well-documented treatments, such as hydroxychloroquine (which has been disapproved as a treatment), "suggests something sinister is going on". The vaccines were initially EUA, but much has been learned over the course of this epidemic, and the Pfizer-BioNTech is now fully authorized by the FDA.[18]

Following his unsuccessful appeal, Glover continued to decline vaccination, and CHOP terminated his employment on November 8, 2021.[19]

## III.    PROCEDURAL HISTORY

Glover filed a signed charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 4, 2022, alleging that CHOP violated his rights under Title VII by denying his a religious-based exemption from CHOP's COVID-19 vaccine mandate.[20]  On November 30, 2022, the EEOC issued a notice of right to sue related to Glover's charge.[21] Glover initiated this lawsuit by filing his Complaint with this Court on February 6, 2022.

The Complaint claims that CHOP violated both Title VII and Pennsylvania Human Relations Act (PHRA) by refusing to exempt Glover from it COVID-19 vaccine based on his claimed religious beliefs.[22]

## IV.    LEGAL STANDARD: RULE 12(b)(6) MOTION TO DISMISS

A Rule 12(b)(6) motion tests the sufficiency of the complaint's allegations. A complaint need only contain a short and plain statement of the facts demonstrating the plaintiff's entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss, the plaintiff must provide

---

[18] Complaint, Exhibit G.
[19] Complaint at ¶ 36.
[20] Complaint at ¶ 38.
[21] *Id.* at ¶ 39.
[22] *See* Complaint at Counts I and II.

"more than labels and conclusions" because "a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

Instead, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* In this sense, Rule 12(b)(6) is designed to screen out complaints involving "a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 311-12 (3d Cir. 1999).

When analyzing a 12(b)(6) motion, courts consider the allegations contained in the complaint, exhibits attached to the complaint, and public records of which the court may take judicial notice. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Likewise, the court may consider undisputedly authentic documents upon which a plaintiff bases his claim. *See Steinhardt Group Inc. v. Citicorp.*, 126 F.3d 144, 145 (3d Cir. 1997).

As explained below, Glover's allegations – even if true – do not establish that CHOP violated Title VII or the PHRA. Accordingly, the Complaint should be dismissed, as required by Rule 12(b)(6).

## V.   ARGUMENT

### A.   Glover's objections to receiving the COVID-19 vaccine are not "religious" beliefs requiring accommodation under Title VII or the PHRA.

Glover's claim is that CHOP violated Title VII[23] by refusing to exempt him from CHOP's COVID-19 vaccine mandate based on what he claims was a sincere religious objection to receiving

---

[23] Although Glover also asserts a parallel claim for alleged violation of the PHRA, religious accommodation claims under the PHRA are evaluated in the same way as religious accommodation claims under Title VII. *See Wilkerson v. New Media Tech Charter Sch., Inc.* 522 F.3d 315, 318-19 (3d Cir. 2008).

this vaccine (but notably, not other vaccines like the flu vaccine which he received that year pursuant to CHOP's influenza vaccine mandate). As stated at the outset, Title VII requires covered employers to accommodate their employees' sincerely held religious beliefs, unless doing so would impose "an undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a *prima facie* case for failure to accommodate under Title VII, Glover must allege facts, that if assumed true, are sufficient to establish that (1) he holds a religious belief that conflicts with a job requirement, (2) he informed CHOP of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement. *See Fallon v. Mercy Catholic Med. Ctr. of Southeastern PA*, 877 F.3d 487, 490 (3d Cir. 2017) (granting motion to dismiss due to the plaintiff's failure to allege facts establishing that objections to healthcare employer's influenza vaccination requirement were based on "religious," as opposed to secular, objections); *Ulrich v. Lancaster Gen. Health,* No. CV 22-4945, 2023 WL 2939585, at *6 (E.D. Pa. Apr. 13, 2023) (granting motion to dismiss for failure to "allege discrimination on the basis of a religious belief" for refusing compliance with COVID-19 testing requirements). If Glover makes such a showing, then the burden shifts to CHOP, which can obtain judgment in its favor by demonstrating either (1) "it made a good-faith effort to reasonably accommodate the religious belief," or (2) "such an accommodation would work an undue hardship on the employer and its business." *Aukamp-Corcoran v. Lancaster General Health*, No. 19-5734, 2022 WL 507479, at *3 (E.D. Pa. Feb. 18, 2022) citing *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).

In this case, Glover's Title VII claim fails because his articulated reasons for the requested exemption were not religious in nature, and accordingly, the Court need only examine this first element of Glover's *prima facie* case to dismiss his complaint. *See Fallon,* 877 F.3d at 494

(affirming dismissal of the plaintiff's Title VII claim for failure to accommodate because "his anti-vaccination beliefs are not religious in nature.") The recent dismissal by Magistrate Judge Reid of this District in *Ulrich v. Lancaster Gen. Health*, is instructive.  There, like here, the plaintiff sought a religious exemption to a testing mandate related to COVID-19, and completed a seven page letter in support.  *Ulrich,* 2023 WL 2939585, at *1.  Even though the hospital in that case previously granted Ulrich a religious exemption from its COVID-19 vaccine mandate (apparently because the hospital previously granted the plaintiff a religious exemption to its influenza vaccine requirement), the hospital denied her a religious exemption from its COVID-19 testing requirement for unvaccinated employees. *Id.* Based exclusively on the plaintiff's religious exemption application, the court dismissed her Title VII claims with prejudice. *Id.* at *6 ("Certainly, discovery is not needed to develop the issue of Ulrich's own thoughts and beliefs."). The same is true here.

Of course, it is not easy to delineate between religious and non-religious beliefs. The U.S. Court of Appeals for the Third Circuit has described that analysis as involving "a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). Yet that court also recognized that "the very concept of ordered liberty" precludes courts from granting any person "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Thus, courts must differentiate between religious beliefs entitled to accommodation and "political, economic, or social doctrines," which employers are not required to accommodate – even if such beliefs are espoused "quite passionately." *Id.* at 1034; *see also United States v. Seeger*, 380 U.S. 163, 165 (1965) (differentiating religious beliefs from unprotected "essentially political, sociological, or philosophical" views); *Ulrich,* 2023 WL 2939585, at *4-5 (same, "Although the *Africa* decision pertained to the First Amendment, it has frequently been cited in Title VII cases.")

In *Africa*, the Third Circuit identified three factors for determining whether beliefs are religious in nature. Specifically, the Third Circuit has held that courts must evaluate, (1) whether the plaintiff's stated beliefs address "fundamental and ultimate questions having to do with deep and imponderable matters," (2) whether those beliefs are "comprehensive in nature" and consist of a "belief-system as opposed to an isolated teaching," and (3) whether the stated beliefs involve "the presence of certain formal and external signs," such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions." 662 F.2d at 1032, 1035.

The allegations in Glover's Complaint, his Religious Accommodation Request form and his three-page appeal letter make clear that his objections to CHOP's COVID-19 vaccine mandate do not involve religious beliefs entitled to protection under Title VII.

As an initial matter, Glover's objections to receiving the COVID-19 vaccine do not implicate "fundamental and ultimate questions having to do with deep and imponderable matters." *Africa*, 662 F.2d at 1033. The Third Circuit has held that beliefs address such issues when they "consider and attempt to come to terms with . . . questions having to do with, among other things, life and death, right and wrong, good and evil." *Id.* The objections Glover listed in his Religious Accommodation Request form and appeal letter do not explicitly implicate any such themes. In his Religious Accommodation Request form, based on an idiosyncratic interpretation of a verse in Revelations, he claims that the COVID-19 vaccine is toxic and will harm him. *See* Complaint, Exhibit D (determining that the word "bow" in the passage is the COVID-19 vaccine, that bow means "poison" in Greek, that the word "Crown" in the passage stands for "CORONA AS IN CORONA VIRUS," and that consequently, he believes that the bible passage is telling him that the vaccine is "TOXIC").

15

But, as the Third Circuit has held, a "concern that [a treatment] may do more harm than good—is a medical belief, not a religious one." *Fallon*, 877 F.3d at 492. As Judge Goldberg of this District held in a recent COVID-related case, "it takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-4024, 2021 WL 4399672 (E.D. Pa. Sept. 27, 2021) (finding "it would be a step too far to count everything [a plaintiff] believes about healthy living as a religious practice").

Also, Glover's unique interpretation of a single bible passage to support his objection to the COVID-19 vaccine, constitutes "an isolated moral teaching," as opposed to one that corresponds to a teaching of one's religious community or some other "comprehensive system of beliefs about fundamental or ultimate matters," as judges in both the U.S. District Court for the Eastern and Middle Districts of Pennsylvania have held. *See Ulrich,* 2023 WL 2939585, at *5 (asserting that following employer's requirements concerning COVID testing "could bring potential harm, introduce harmful substances, cause adverse health effects or endanger [plaintiff's] wellbeing… clearly state medical concerns, which [plaintiff] attempts to "cloak with religious significance,' as in *Africa*"); *Finkbeiner v. Geisinger Clinic*, 21-01903, 2022 WL 3702004, at *4 (M.D. Pa. Aug. 26, 2022) (quotation omitted) (claim that plaintiff's religion gave him a "God given right to make [his] own choices regarding what is good or bad for [him]…. Though fungible enough to cover anything that Finkbeiner trains it on, this belief is an isolated moral teaching . . . not a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* at *4 (internal quotations omitted); *Geerlings*, 2021 WL 4399672 at*6 (Plaintiff who interpreted bible passage "on her own and in response to the recent pandemic contributes to an impression that her belief is an 'excuse for avoiding… unwanted legal obligations'"), quoting *Africa,* 662 F.2d at 1030.

This same reasoning holds true for Glover's second attempt to articulate a religion-based sincerely held belief by referencing that his body is a temple of God and that the introduction of mRNA into his body "is the equivalent of a prohibited "unclean food" that causes harm to my conscience." *See* Complaint, Exhibit F at 1 (citing the bible's Corinthians verses). Considering nearly identical bible citations and arguments to support a finding that plaintiff's beliefs were religious in nature, the court in *Ulrich* found that this too consisted of an "isolated moral teaching," and to allow plaintiff to determine which "medical interventions comport with this commandment, is, as in *Finkbeiner*, fungible enough to cover anything she trains it on," and therefore insufficient to plead a sincerely held religious belief. *Ulrich,* 2023 WL 2939585, at *1, 5.

Glover's other articulated reasons for objecting to CHOP's vaccine mandate, in which he concedes are "just as important if not more" than his unfounded religious objections – (1) that requiring the "experimental" vaccine violates his constitutional rights and is part of some "sinister" conspiracy to prevent certain alternative treatments for COVID-19 be made available (including the disproved treatment Hydroxychloroquine); and (2) that the vaccine is not needed because the virus that had killed millions world-wide is not that bad ("Never before have we ever thought that healthy children can kill Grandma and we don't need to now") – demonstratively challenge the factual and scientific basis for imposing the mandate, and accordingly show that plaintiff's opposition to vaccination is not based on religious grounds. *See Mason v. Gen. Brown Cent. Sch. Dist.,* 851 F.2d 47, 51 (2d Cir. 1988) (opposition to vaccination not based on religious grounds, but on scientific and secular theories are not protected); *Blackwell v. Lehigh Valley Health Network*, NO. 22-03360, 2023 WL 362392 at *8 (E.D. Pa. Jan. 23, 2023) (finding that basis for Plaintiff's belief is "'political, sociological or philosophical' – and not religious" where plaintiff contended that mandated COVID-19 testing was ineffective, and that those vaccinated are "just as

likely to spread COVID as unvaccinated individuals") quoting *Fallon*, 877 F.3d at 490; *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 388 (M.D. Pa. 2021) (plaintiffs' "hyper-focus on the 'science' of [COVID-19] testing and its potentially harmful effects in their papers only furthers this Court's skepticism that what objection they might have is rooted in a scientific or medical belief, not religion").

Further, as shown in Glover's Religious Accommodation Request form, he never requested a religious exemption from CHOP's flu vaccine mandate, and continued to receive the vaccine. *See* Complaint, Exhibit D at 1 ("Does the religious belief identified above prevent you from receiving other vaccines or just the COVID-19 vaccines?: Only the COVID-19 Vaccines"). Such facts also support the finding that Glover's objections are not religious in nature subject to accommodation under Title VII. *Aukamp-Corcoran*, 2022 WL 507479, at *5 (finding that evidence that Plaintiff did not request religious-based exemptions to the influenza vaccine for most of his employment, and "had routinely undergone vaccination for many years after Defendant made it mandatory…. does not support the sincerity of Plaintiff's claimed religious beliefs").

Accordingly, the Court should dismiss Glover's Complaint with prejudice.

## VI.    CONCLUSION

As shown, Glover's claims are legally deficient. He has failed to allege facts that, if believed, would establish that his objections to CHOP's vaccine mandate were religious in nature. Plaintiff concedes that even his self-determined interpretation of bible verses concerning his physical health is less important than his secular reasons for objecting to the vaccine mandate. Accordingly, the Court should enter an order granting CHOP's motion and dismiss Glover's claims with prejudice in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: May 12, 2023                    Respectfully submitted,

                                       /s/ Scott M. Lempert
                                       Neil J. Hamburg (Pa. Bar No. 32175)
                                       Scott M. Lempert (Pa. Bar No. 76765)
                                       HAMBURG LAW GROUP, PLLC
                                       1 Franklin Town Blvd., Suite 1106
                                       Philadelphia, PA  19103
                                       (215) 858-2225
                                       (484) 534-8587 (fax)

                                       Attorneys for Defendant
                                       The Children's Hospital of Philadelphia

## <u>CERTIFICATE OF SERVICE</u>

I, Scott M. Lempert, hereby certify that on this 12th day of May, 2023, a true and correct copy of the foregoing, Defendant The Children's Hospital of Philadelphia's Memorandum in Support of its Motion to Dismiss has been filed electronically and is now available for viewing and downloading from the Court's ECF system. I am also serving a copy of the foregoing by electronic mail upon:

> David S. Dessen, Esquire
> 600 Easton Road
> Willow Grove, PA  19090
>
> ddessen@dms-lawyer.com
>
> Attorney for Plaintiff

> /s/ Scott M. Lempert
> SCOTT M. LEMPERT