**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DONALD GLOVER,
                Plaintiff

vs.                              No. 2:23-0463

THE CHILDREN'S HOSPITAL OF
PHILADELPHIA,
                Defendant

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW**

                                            **DESSEN, MOSES & ROSSITTO**

Date: August 3, 2023                    By  */s/ David S. Dessen*
                                                  DAVID S. DESSEN, ESQUIRE
                                                  PA ID. 17627
                                                  Attorney for Plaintiff

                                                  600 Easton Road
                                                  Willow Grove, PA  19090
                                                  (215) 658-1400
                                                  ddessen@dms-lawyer.com

# **TABLE OF CONTENTS**

|      |            | Page |
|------|------------|------|
| I.   | ARGUMENT……………………………………………………………… | 1 |
| II.  | CONCLUSION…………………………………………………………… | 6 |

**TABLE OF AUTHORITIES**

**CASES**                                                                                                                    Page

*Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-5453,
   2013 U.S. Dist. LEXIS 115353* (E.D. Pa., Aug. 15, 2013)…………..   passim

*Hernandez v. Comm'r,*
   490 U.S. 680, 109 S. Ct. 2136 (1989)……………………………………...   1

*Leeck v. Lehigh Valley Health Network*, No. 22-4634,
   2023 U.S. Dist. LEXIS 108543 * (E.D. Pa., Jun. 23, 2023)………………..   passim

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
   450 U.S. 707, 101 S. Ct. 1425 (1981)……………………………………….   1, 2

*United States v. Seeger*,
   380 U.S. 163, 85 S. Ct. 850 (1965)………………………………………….   2

*Welsh v. United States*,
   398 U.S. 333, 90 S. Ct. 1792 (1970)…………………………………….…..   2

**CONSTITUTION**

   *First Amendment*………………………………………………………………   1,4

**STATUTES**

   42 U.S.C. § 2000e(j)……………………………………………................   6

**RULE**

   12(b)(6) F.R.CIV.P ……………………………………….......................   1

I. **ARGUMENT**

The ultimate question before the Court is whether the beliefs expressed by Plaintiff Donald Glover (hereinafter referred to as "Glover") are religious beliefs entitled to protection under the *First Amendment* or as Defendant, The Children's Hospital of Philadelphia (hereinafter referred to as "CHOP") contends, merely social or political beliefs not entitled to *First Amendment* protection.

In *Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-5453, 2013 U.S. Dist. LEXIS 115353* (E.D. Pa., Aug. 15, 2013), the Plaintiff, an observant Roman Catholic, objected to wearing a name badge around her neck that contained a list of ten office rules under the words "Our Ten Commandments" because she believed that the Ten Commandments were only in the Bible. After complaining about wearing the badge with the Ten Commandants list for about two months, Plaintiff was fired and subsequently filed suit for religious discrimination. The Defendant filed a Rule 12(b)(6) Motion to Dismiss alleging that the Plaintiff's:

> [O]bjection to wearing the badge was a "personal preference" that is not entitled to statutory protection because, *in their view*, the badge had "absolutely nothing to do with religion." (emphasis in the original).

*Ambrose* at *7.

Judge Baylson observed that like CHOP in the instant case, the Defendants in *Ambrose* were not questioning the sincerity of Plaintiff's belief that the badge has religious connotations; rather, they were questioning the validity of this belief.

The Supreme Court has long made clear that it is "not within the judicial ken" to determine the validity of religious belief. *Hernandez v. Comm'r,* 490 U.S. 680, 699, 109 S. Ct. 2136, 2147 (1989). The Court has thus stated in no uncertain terms that "the resolution of [what is a religious belief] is *not to turn upon a judicial perception of the particular belief or practice in question."* *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714, 101 S. Ct. 1425,

1

1430 (1981) (emphasis added). Courts "are not free to reject beliefs because they consider them 'incomprehensible,'" *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, (1965), because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others," *Thomas*, 450 U.S. at 714. 101 S. Ct. at 1430.

Since courts lack the competence to be "arbiters of scriptural interpretation," *Thomas*, 450 U.S. at 716, 101 S. Ct. at 1431, a court's inquiry into whether a belief is "religious" is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339, 90 S. Ct. 1792, 1796 (1970) (quoting *Seeger*, 380 U.S. at 185).

The Defendants in *Ambrose* argued that requiring employees to wear a name badge cannot conflict with a religious belief because the badge has absolutely nothing to do with religion. In the Defendants' view, the term "Our Ten Commandments" was used in the vernacular sense and was no different than an employer calling an employee angel, describing a dessert as sinful or referencing another common use of the term 10 commandments, such as the 10 commandments of fantasy football. The Defendants also argued that the commandments on the badge were innocuous rules for employee conduct with no connection to religion and that there is no deeply held Roman Catholic belief that prohibits or forbids adherents from wearing a name badge that characterizes secular guidelines as Our 10 Commandments,

As Judge Baylson explained in denying the Defendants' motion:

> Each of these three premises suffer from the same fatal flaw: they measure the religious validity of *Plaintiff's* objection to wearing the badge based on *Defendants*' "scheme of things." It is irrelevant that Defendants intended the words "Ten Commandments" to be understood in their "vernacular sense" or that the rules listed on the badge did not discuss religion. Not only does Defendants' (non-religious) interpretation of the language have no relevance to Plaintiff's (religious) interpretation, but Defendants' interpretation obscures the actual basis of Plaintiff's objection.

2

> \*\*\*
>
> Nor does it matter if, as Defendants assert, most adherents to the Roman Catholic faith do not share Plaintiff's objection to wearing the badge. As the Supreme Court has stated, a person's belief can be religious even if it is not "shared by all of the members of [her] religious sect." *Thomas*, 450 U.S. at 715-16.

*Ambrose* at \*14-15.

In *Leeck v. Lehigh Valley Health Network*, No. 22-4634, 2023 U.S. Dist. LEXIS 108543 \* (E.D. Pa., Jun. 23, 2023), Plaintiff, a nurse at the Defendant's hospital, sought a religious exemption from the hospital's COVID-19 vaccination mandate. In her request, the Plaintiff, submitted, in addition to the hospital provided exemption form, a personal statement, a letter from her pastor and a letter from an attorney.

On the hospital's exemption form, the Plaintiff stated that "God created my body in His image, and obtaining any chemical injections at this time and moving forward is not His plan for me." In her letter, the Plaintiff went on to state that:

> "my God-given sovereignty to reject this vaccine"; "my inalienable rights to life, liberty and the pursuit of happiness"; that the assumption that unvaccinated individuals are a threat to the health and safety of others is "politically biased" and only supported by "the unscientific 'motto' of the Biden administration"; that vaccines are "not necessary for operational reasons" to Lehigh; that the mandated vaccines have "not been FDA approved"; that Lehigh's actions "do not align . . . with the morals, beliefs, and guidance of my own personally-held beliefs, morals, and spiritual guidance"; that "my natural immunity . . . will serve me better than any vaccination"; and that a "chemical injection" may "deem my body impure in the eyes of the Lord."

*Leeck* at \*3-4.

In his letter, the Plaintiff's pastor wrote that no one should be forced or coerced into receiving a chemical injection into the Temple of the Holy Spirit because the long-term effects of these vaccines are uncertain. The Defendant denied the requested exemption.

The Plaintiff then submitted the second letter. In her second letter, the Plaintiff stated:

3

> "I believe that life begins at the moment of conception, and abortion is murder"; "[t]he Covid-19 vaccine was developed using aborted human fetal cells"; therefore "the way [the Moderna and Pfizer vaccines] are manufactured and the efficacy tested is by the use of the aforementioned aborted fetal cells, and that goes against my deeply-held religious belief concerning abortion." She also states on the second exemption form that "I renewed my faith and belief in Jesus as my Lord and Savior in 2007." Leeck also cited additional scriptural references to the Bible: Psalm 127:3-5; Jeremiah 1:5; and Matthew 18:1-5.

*Leeck* at \*4-5. The hospital again denied the Plaintiff's requested exemption and she filed suit.

In sum, the Plaintiff claimed that she has "sincerely held Christian religious beliefs" and is a member of Bethany United Methodist Church. So, even though the Plaintiff holds religious beliefs, the question is whether her belief that "obtaining any chemical injections at this time . . . is not His plan for me" and her belief that "[i]t is a God-given task that I protect the physical integrity of my body against injections and harmful substances" which conflict with her job requirement are protected by the *First Amendment*. In answering this question, the Court observed:

> [t]he Supreme Court has held that "a person's belief can be religious even if it is not 'shared by all of the members of [her] religious sect.'"
>
> \*\*\*
>
> Likewise, in this case, it is not within the Court's function or competence to assess whether Leeck misreads the tenets of her Methodist faith or whether the scripture she cites means what she thinks it does. So, even if her anti-vaccine beliefs are not shared by a religious group of which she is a part, this is not dispositive of whether her belief is religious. Instead, the Court focuses on whether Leeck's sincerely held beliefs about vaccines are religious according to *her* scheme of things. This is admittedly a difficult task for courts to do. To aid in this task, the Court relies on the criteria described above: (1) the ultimate ideas criterion; (2) the comprehensiveness criterion; and (3) the structural characteristics criterion.
>
> With regard to the ultimate ideas criterion, Leeck's belief that a "chemical injection" may "deem my body impure in the eyes of the Lord" and her belief that some vaccines are unacceptable because they are developed with the use of aborted fetal cells both deal with life and death, right and wrong, good and evil, and man's place in the universe; therefore, they are concerned with ultimate ideas and are religious in nature.

4

*Leeck* at *16-18. The Court, therefore, denied the Defendant's Motion to Dismiss.[1]

As in *Ambrose* and *Leeck,* CHOP does not question the sincerity of Glover's beliefs but argues that in ***its opinion***, Glover's beliefs are not religious because one is "idiosyncratic" and the other is so general as to encompass anything.  CHOP ignores Glover's belief that taking the vaccine is morally wrong because cells from aborted fetuses were used in the development of the COVID-19 vaccine.  As Judge Baylson succinctly observed:

> Courts "are not free to reject beliefs because they consider them 'incomprehensible,'" *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, (1965), because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others," *Thomas*, 450 U.S. at 714.

## II.    CONCLUSION

For thousands of years, members of the Jewish faith have believed that they are "holy people" and that the Torah prescribes a holy diet because you are what you eat.  Kosher is God's diet for spirituality.  Jewish mysticism teaches that non-kosher food such as pork and shellfish block the spiritual potential of the soul.

More recently, individuals who are members of the Jehovah's Witnesses faith refuse blood transfusions.  They justify their refusal to receive blood transfusions based upon their understanding and interpretation of various statements in both the Old and New Testaments of the Bible which they interpret as a direction from God that they avoid taking blood not only in obedience to God but also out of respect for him as the giver of life.

---

[1] The Court inquired during oral argument what effect, if any, Glover's inclusion of references to the *Fourteenth Amendment* and alternative treatments for COVID-19 had on his request for an exemption from CHOP's COVID-19 vaccination mandate. Judge Leeson held in *Leeck* at *18 that*:

> The Court agrees that these reasons are more medical or political than they are religious. However, at this stage in the litigation, the presence of reasons that do not satisfy the first criterion need not negate the presence of reasons that do satisfy the criterion.

Glover sincerely believes, based upon his interpretation of verses in the Bible, that God has forbidden him from receiving the COVID-19 vaccine.  The Supreme Court has made crystal clear that neither CHOP nor this Court may question the validity or logic of Glover's belief.  Like the Plaintiffs in *Ambrose* and *Leeck,* because Glover has stated a *prima facie* case of religious discrimination in violation of 42 U.S.C. 2000e(j), CHOP's Motion to Dismiss should be denied.

Date: August 3, 2023	**DESSEN, MOSES & ROSSITTO**

By   */s/  David S. Dessen*
	DAVID S. DESSEN, ESQUIRE
	PA ID. 17627
	Attorney for Plaintiff

	600 Easton Road
	Willow Grove, PA  19090
	(215) 658-1400
	ddessen@dms-lawyer.com

6

## CERTIFICATION OF SERVICE

I, DAVID S. DESSEN, ESQUIRE, hereby certify that I electronically filed the foregoing Supplemental Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notice of such filing to:

| | |
|---|---|
| Neil J. Hamburg, Esquire<br>HAMBURG LAW GROUP, PLLC<br>1 Franklin Town Blvd., Ste 1106<br>Philadelphia, PA  19103<br>*Attorneys for Defendant The Children's Hospital of Philadelphia* | Scott M. Lempert, Esquire<br>HAMBURG LAW GROUP, PLLC<br>1 Franklin Town Blvd., Ste 1106<br>Philadelphia, PA  19103<br>*Attorneys for Defendant The Children's Hospital of Philadelphia* |

Date: August 3, 2023            BY:   */s/ David S. Dessen*
                                      DAVID S. DESSEN