IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD GLOVER,<br><br>               Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL OF PHILADELPHIA,<br><br>               Defendant. | CIVIL ACTION<br>NO. 2:23-CV-0463 |

**OPINION**

**Slomsky, J.**                                                                                                               **January 25, 2024**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 2

II.  BACKGROUND .................................................................................................................. 2

III. STANDARD OF REVIEW .................................................................................................. 6

IV. ANALYSIS ........................................................................................................................... 8

    **A.  Plaintiff Pled Sufficient Facts to Show that his Beliefs are Religious in Nature** ...... 10

        1. "Ultimate Ideas" Criterion ................................................................................... 14

        2. "Comprehensiveness" Criterion .......................................................................... 15

        3. "Structural Characteristics" Criterion ................................................................. 16

V.  CONCLUSION .................................................................................................................... 16

I.  **INTRODUCTION**

Plaintiff Donald Glover ("Plaintiff") was employed by the Children's Hospital of Pennsylvania ("CHOP" or "Defendant") as a supervisor in its Biomedical Engineering Department. (Doc. No. 1 at 3.) During the COVID-19 pandemic, CHOP required all employees to be vaccinated unless they were exempt for religious or other reasons. (See id. at 5.) Plaintiff requested a religious exemption because his religious beliefs prevented him from receiving the vaccine. (See id.) CHOP did not agree with the request for a waiver and turned him down. (See id.) When Plaintiff still refused to be vaccinated, his employment was terminated by CHOP. (See id. at 7.)

Plaintiff sued CHOP for terminating him, alleging in a Complaint that CHOP violated federal and Pennsylvania state employment discrimination statutes. (See id.) In response, Defendant filed a Motion to Dismiss the Complaint. (Doc. No. 8.) On July 6, 2023, a Hearing on the Motion to Dismiss was held. (Doc. No. 15.) For reasons set forth below, the Motion to Dismiss will be denied.

II.  **BACKGROUND**

On December 17, 2017, Defendant CHOP hired Plaintiff as a supervisor in the Biomedical Engineering Department. (Doc. No. 1 at 3.) Plaintiff worked in CHOP's University City medical facilities. (Doc. No. 8-1 at 8.) On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. (See id. at 2.) On March 13, 2020, former President Donald Trump declared COVID-19 a national emergency. (See id.) On August 3, 2021, CHOP's Chief Executive Officer ("CEO") issued a vaccine mandate which required all employees to be fully vaccinated against COVID-19 by October 20, 2021. (Id. at 7.) On August 23, 2021, CHOP implemented a Standard Operating Procedure ("SOP") for handling requests for religious exemptions and

accommodations to the mandate. (Doc. No. 1 at 5.) CHOP employees seeking a medical or religious exemption were required to file their requests by September 15, 2021. (Id. at 4.)

On September 9, 2021, Plaintiff submitted a Religious Accommodation Request form to CHOP. (See id. at 5.) In the request, Plaintiff sought an exemption from taking the vaccine and no other alternative accommodations. (See id. at 25.) Plaintiff provided reasons in support of the sought-after exemption:

> [i]t is my sincere religious[1] that the whole world has entered a PROPHETIC TIMELINE based on the book of REVELATIONS 6th Chapter and the 2nd verse, of the HOLY Bible, Which states "And I looked and behold, a white horse. He who sat on it had a BOW; and a CROWN was given to him, and he went out conquering and to conquer. The BOW is the vaccine and BOW translates to POISON in the GREEK. And CROWN is another word for CORONA as in CORONA VIRUS. Hence, I believe the vaccine to be TOXIC . . . Vaccine was made at WARP speed, Vaccine is an experiment and risk benefit is not favorable.[2]

(Id. at 2, 25-26.) In his request, Plaintiff also stated that he was a practicing Christian for twenty years and affiliated with Church International since December, 2020. (See id. at 26.) In his request, Plaintiff also acknowledged that he had not previously sought exemptions for other vaccines, including the Influenza ("Flu") vaccine, which was annually required of all CHOP employees. (Doc. No. 1 at 25, Doc. No. 8-1 at 11.)

On September 22, 2021, Defendant denied Plaintiff's request for an exemption because Plaintiff did not "sufficiently demonstrate that the sincerely held religious belief prohibits vaccination." (Doc. No. 1 at 5, 28.) Plaintiff was permitted to file an appeal of Defendant's decision by September 25, 2021. (Id.) On September 22, 2022, Plaintiff timely filed an appeal. (Id. at 5-6.)

---

[1] Plaintiff omitted the word "belief" in his Request. (Doc. No. 1 at 25.)

[2] Errors in capitalization and punctuation are in the original.

3

In his appeal, Plaintiff cited several reasons why Defendant should grant him a religious exemption to the vaccine mandate. (See id. at 30-32.) First, Plaintiff averred that aborted fetal cells were used in the development of the vaccine, and he believes that abortion is "gravely wrong" because the Bible instructs that murder is a sin. (Id. at 4, 30.) He asserted that taking the vaccine would go against his beliefs that his body is "God's temple" because the vaccine is "unclean." (Id. at 4.) Specifically, he stated that:

> I sincerely believe that all human beings are made in the image of God, and this idea affirms the unique value of all human life. The sixth commandment says "You shall not murder" (Exodus 20:13), I believe that abortion is gravely wrong at every stage. Furthermore, I believe a physical body is given to each of us in our quest to fulfill our destiny and purpose here on earth. Specifically the New Testament teaches that: "Don't you know that you yourselves are Gods temple and that God's Spirit dwells in your mist?" (1 Corinthians 3:16) "If anyone destroys Gods temple, God will destroy that person; for Gods temple is sacred, and you together are that temple" (1 Corinthians 3:17).
>
> The Pfizer and Moderna COVID-19 vaccines in early development of mRNA vaccine technology used fetal cells for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-COV-2 Spike protein) or to characterize the SARS-Cov-2 spike protein. The non-replicating viral vector 14 Complaint, Exhibit E. Case 2:23-cv-00463-JHS Document 8-1 Filed 05/12/23 Page 12 of 24 9 vaccine produced by Johnson& Johnson required the use of fetal cell cultures, Specifically PER.CG, in order to produce and manufacture the vaccine.
>
> This mechanism for altering my God given body is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Covid-19 vaccines to me are unclean. I believe in and follow God and the principles laid out in his Words and I have a deeply held belief that these vaccines violate them.

(Id. at 4, 30-33.)

Second, Plaintiff alleged that "he is being discriminated against because [he] refuse[s] to take an experimental vaccine." (Id. at 31.) In support of this contention, Plaintiff argued that "just as important, if not more, are my Constitutional rights as an American citizen, which affords me equal protection under the law according to the 14th Amendment." (Id.) Because Plaintiff suggested that other effective, yet unpublicized treatments for COVID-19 existed, he asserted that

4

"something else sinister is going on." (Id.) Third, Plaintiff stated that the vaccine is unnecessary because other treatments exist, such as hydroxychloroquine,[3] and the "low fatality rates" of COVID-19 mean that "there should be no need for anyone to worry about dying from the coronavirus." (Id. at 32.)

On October 11, 2021, Defendant denied Plaintiff's appeal. (Id. at 34.) In support of its denial, Defendant stated that "the evidence provided does not support your assertion that your belief is religious in nature . . . [or] sincerely held." (Id.) As Defendant stated further:

> . . . [y]ou have expressed that your constitutional right not to take a vaccine you view as experimental, is more important than a religious objection. And that the refusal to make public known and well-documented treatments, such as hydroxychloroquine (which has been disapproved as a treatment), 'suggests something sinister is going on.' The vaccines were initially EUA [Emergency Use Authorization], but much has been learned over the course of this epidemic, and the Pfizer-BioNTech is now fully authorized by the FDA [United States Food and Drug Administration].

(Id.) Consequently, Defendant informed Plaintiff that he must be vaccinated against COVID-19 to remain employed at CHOP. (Id.) Plaintiff did not comply, and on November 8, 2021, Defendant terminated Plaintiff's employment. (Id. at 7.)

On August 4, 2022, Plaintiff filed a signed charge of religious discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant violated Title VII when it denied Plaintiff a religious-based exemption from the vaccine mandate. (Doc. No. 1 at 6.) On November 30, 2022, the EEOC issued to Plaintiff a letter informing him of his right to sue Defendant on this claim. (Id.)

---

[3] Hydroxychloroquine is a medicine used to treat malaria and auto-immune disorders, such as lupus. See Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin., 479 F. Supp. 3d 570, 574 (W.D. Mich. 2020), aff'd sub nom. Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin., 13 F.4th 531 (6th Cir. 2021).

On February 6, 2023, Plaintiff filed his Complaint. (Doc. No. 1.) In the Complaint, Plaintiff alleges that Defendant violated Title VII and the Pennsylvania Human Relations Act ("PHRA") when it refused to provide Plaintiff with a religious exemption from the COVID-19 vaccine mandate. (See id.) In his Complaint, Plaintiff alleges that as a result of his termination, he was briefly unemployed, then moved to a new job at the Children's Hospital at Erlanger ("CHE") in Chattanooga, Tennessee. (See id. at 9.) Consequently, Plaintiff seeks lost wages, front and back pay, the difference between CHOP's contribution and CHE's contribution to Plaintiff's 403(b) retirement plan, moving expenses, emotional distress damages, punitive damages, and attorney's fees and costs. (Id. at 10-11.)

On May 12, 2023, Defendant filed its Motion to Dismiss for Failure to State a Claim. (Doc. No. 8-1.) On May 23, 2023, Plaintiff filed a Response in Opposition. (Doc. No. 9.) On May 30, 2023, Defendant filed its Reply. (Doc. No. 10.) On July 6, 2023, a hearing was held on the Motion to Dismiss. (Doc. Nos. 11, 15.) Following the hearing, the Court requested that the parties file supplemental briefs. (Doc. No. 14.) The parties did so. On August 3, 2023, Defendant filed its Memorandum in Support of the Motion to Dismiss. (Doc. No. 17.) On that same day, Plaintiff filed its Memorandum in Opposition. (Doc. No. 18.)

### III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).

Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination

is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV.   ANALYSIS

As noted above, Defendant moves to dismiss Plaintiff's claims under both Title VII and the PHRA.[4] (See Doc. No. 8-1.)  In support of the Motion to Dismiss, Defendant argues that Plaintiff's objections to receiving the COVID-19 vaccine are not religious beliefs requiring accommodation under Title VII or the PHRA.  (See id. at 16.)  In particular, Defendant asserts that Plaintiff's "claims that the COVID-19 vaccine is toxic and will harm him" are notions "based on an idiosyncratic interpretation of a verse in Revelations[5] . . ." (Id. at 19.)  Further, Defendant submits that Plaintiff's "unique interpretation of a single [B]ible passage to support his objection to the COVID-19 vaccine constitutes 'an isolated moral teaching,' as opposed to one that corresponds to a teaching of one's religious community or some other 'comprehensive system of beliefs about fundamental or ultimate matters . . .'" (Id.) (citing Ulrich v. Lancaster Gen. Health, No. CV 22-4945, 2023 WL 2939585, at *4 (E.D. Pa. Apr. 13, 2023)).  Additionally, Defendant submits that Plaintiff's "second attempt to articulate a religion-based sincerely held belief by stating that his body is a temple of God and that the vaccine would be 'unclean food' is also an 'isolated moral teaching.'" (Id. at 21.)  Finally, Defendant argues that:

> [Plaintiff's] other articulated reasons for objecting to CHOP's vaccine mandate, [] which he concedes are 'just as important if not more' than his unfounded religious objections – (1) that requiring the 'experimental' vaccine violates his constitutional rights and is part of some 'sinister' conspiracy to prevent certain alternative treatments for COVID-19 be made available (including the disproved treatment

---

[4] The Third Circuit has held repeatedly that "[c]laims under the PHRA are interpreted coextensively with Title VII Claims." Atkinson v. Lafayette College, 460 F.3d 447, 454 n. 6 (3d Cir. 2006).  Therefore, this Court's decision on Plaintiff's Title VII claim will also apply to Plaintiff's claim under the PHRA.

[5] The Book of Revelation is the final book in the Bible which, according to persons of Christian faith, describes various prophetic visions of the end-times.

Hydroxychloroquine); and (2) that the vaccine is not needed because the virus that had killed millions world-wide is not that bad ('Never before have we ever thought that healthy children can kill Grandma and we don't need to now')– demonstratively challenge the factual and scientific basis for imposing the mandate, and accordingly show that plaintiff's opposition to vaccination is not based on religious grounds.

(Id.)

In opposition to Defendant's Motion to Dismiss, Plaintiff argues that his beliefs are sincere and religious in nature. (Doc. No. 9 at 7.) In particular, Plaintiff contends that "he has a sincere religious belief that agreeing to be vaccinated with the COVID-19 vaccine would be immoral." (Id. at 16.) Further, Plaintiff argues that "it was unlawful for [Defendant] to inquire into the validity or plausibility of [Plaintiff's] beliefs when it considered his request for a religious accommodation." (Id. at 8.) Finally, Plaintiff asserts that "it was unlawful for [Defendant] not to conduct a fair and impartial review of Glover's request for a religious accommodation." (Id. at 18.)

Title VII states, in relevant part:

> [i]t shall be an unlawful employment practice for an employer . . . (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion.

42 U.S.C.A § 2000e-2(a)(1)-(2).[6]  Likewise, the PHRA makes it unlawful "[f]or any employer because of . . . religious creed . . . to discharge from employment such individual . . ." 43 P.S. § 955(a).

---

[6] Before bringing a claim of employment discrimination under Title VII, an employee must file a claim with the EEOC and receive a right to sue letter. Story v. Mechling, 214 F. App'x 161, 163 (3d Cir. 2007). Here, Plaintiff filed his claim with the EEOC on August 4, 2022. (Doc. No. 1 at 6.) On November 30, 2022, Plaintiff was issued a right to sue letter. (See id.)

To survive Defendant's Motion to Dismiss the federal and state claims, Plaintiff's Complaint must allege sufficient facts to establish a prima facie case of religious discrimination. See Tatis, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). To state a prima facie claim of religious discrimination, an employee must show that (1) they held a sincere religious belief that conflicted with a job requirement, (2) they informed the employer of that conflict, and (3) they were disciplined for not complying with the conflicting job requirement. See Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania, 877 F.3d 487, 490 (3d Cir. 2017).

Here, the second and third element are plainly satisfied. It is evident from the Complaint that Plaintiff informed Defendant of the conflict with an accommodation request and appeal letter (Doc. No. 1. at 5, 25.) In addition, Plaintiff was terminated by Defendant on November 8, 2021 for failure to comply with the mandate. (See id. at 7.)

As a result, the only element at issue here is the first one: whether Plaintiff has pled sufficient facts to show that he had a sincerely held religious belief which conflicted with a job requirement. See Fallon, 877 F.3d at 490. Defendant argues that Plaintiff has failed to establish this element. (See Doc. No. 8-1 at 5.) Courts typically break down this element into two parts: (1) is the belief sincerely held, and (2) is the belief religious in nature. See United States v. Seeger, 380 U.S. 163, 185 (1965). Defendant only contests whether Plaintiff's beliefs are religious in nature. This Court disagrees with the position of Defendant. Plaintiff has pled sufficient facts to show that he has a sincerely held belief that is religious in nature.

**A. Plaintiff Pled Sufficient Facts to Show that his Beliefs are Religious in Nature**

Construing the facts in the light most favorable to Plaintiff as non-movant, Plaintiff has pled sufficient facts supporting the first element of a prima facie religious discrimination claim to survive a motion to dismiss. Specifically, Plaintiff has pled facts showing that his beliefs about

the use of aborted fetal cells in the vaccine and his body as "God's temple" are religious in nature, not merely "isolated moral teachings." See Africa v. Commonwealth of Pennsylvania., 662 F.2d 1025, 1032 (3d Cir. 1981).

In Africa v. Commonwealth of Pennsylvania, the Third Circuit Court of Appeals set out a three-part inquiry to determine whether a belief is "religious" rather than an "isolated moral teaching" or philosophical belief. Id. The test is set forth as follows:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

Id. As noted in Africa, such a task presents "a most delicate question."[7] Id. at 1031. However, such a task is necessary when "the very concept of ordered liberty precludes allowing a person 'a blanket privilege' to 'make his own standards on matters of conduct in which society as a whole has important interests.'" Id. (quoting Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)). However "[c]ourts 'are not free to reject beliefs because they consider them "incomprehensible," because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others."'" Ambrose v. Gabay Ent & Assocs., P.C., No. 12-5453, 2013 WL 4195387, at *10 (E.D. Pa. Aug. 15, 2013) (quoting Seeger, 380 U.S. 163, 185 (1965)). Moreover, it is "not within the judicial function and judicial competence" to be an "arbiter of scriptural interpretation." See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div., 450 U.S. 707, 716 (1981).

---

[7] While the court in Africa dealt with a First Amendment claim, the decision has frequently been cited in Title VII cases. See, e.g., Ellison v. Inova Health Care Servs., No. 123CV00132MSNLRV, 2023 WL 6038016, at *3 (E.D. Va. Sept. 14, 2023); see also Aliano v. Twp. of Maplewood, No. 22CV5598ESAME, 2023 WL 4398493, at *1 (D.N.J. July 7, 2023); Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), appeal dismissed, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023).

At the motion to dismiss stage, multiple district courts have held that when supported by specific Biblical scripture, an objection to receiving the COVID-19 vaccine based upon the use of aborted fetal cells constitutes a religious belief and satisfies the three-part inquiry in Africa. See Leeck v. Lehigh Valley Health Network, No. 5:22-CV-4634, 2023 WL 4147223, at *9 (E.D. Pa. June 23, 2023); see also Ellison v. Inova Health Care Servs., No. 123CV00132, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023); Aliano v. Twp. of Maplewood, No. 22CV5598, 2023 WL 4398493, at *7 (D.N.J. July 7, 2023).

For example, in Leeck, the plaintiff alleged religious discrimination under Title VII after her employment was terminated due to her refusal to be vaccinated; her refusal stemmed from her objection to the use of aborted fetal cell lines in the COVID-19 vaccine. No. 5:22-CV-4634, 2023 WL 4147223, at *2. The plaintiff in Leeck stated that her religious beliefs motivating her refusal to vaccinate included: (1) her Christian faith, (2) her corresponding belief that "life begins at the moment of conception and abortion is murder," (3) her belief that her body is "a temple of the Holy Spirit" and a chemical injection would "deem [her] body impure in the eyes of the Lord," and (4) that the use of aborted fetal cells in the manufacture of vaccines went against her "deeply-held religious belief concerning abortion." Id. The court held that all three parts of the inquiry set forth in Africa weighed in favor of the religious nature of plaintiff's beliefs. Id. at *7.

First, the court noted that plaintiff's beliefs that her body was a temple and that abortion was murder satisfied the first inquiry in Africa as they "deal[t] with life and death, right and wrong, good and evil, and man's place in the universe; therefore, they are concerned with ultimate ideas and are religious in nature." Id. Second, the court found that the second inquiry in Africa weighed in favor of plaintiff's beliefs as religious because they were "more than an isolated idea," instead comprising a part of her "broader Christian beliefs." Id. In particular, the court noted that the

12

plaintiff had justified her beliefs as comprehensive in nature "by appeal to Biblical scripture." Id. Finally, the court held that the third inquiry in Africa concerning "structural characteristics" also weighed in favor of plaintiff's beliefs as religious in nature. Id. Because the plaintiff had

> asserted that her beliefs about vaccination are a part of her organized religious faith and has cited scripture and reasons beyond mere threadbare assertions, the [c]ourt accepts as true, for the purpose of adjudicating a motion to dismiss, that her belief is inseparable from and interdependent with her Christian . . . beliefs.

Id. In addition, the court noted that the presence of non-religious reasons that fail to satisfy the first element of a Title VII prima facie religious discrimination claim "need not negate the presence of reasons that do satisfy the criterion" at the motion to dismiss stage. Id. Thus, the court held that the beliefs were religious in nature and denied defendant's motion to dismiss as plaintiff had set forth each element of the prima facie claim.

To the contrary, when a belief is pled as an "isolated moral teaching" unmoored from a comprehensive belief system or any appeal to religious texts, the Third Circuit has held that such a belief is not religious in nature for the purposes of Title VII. See Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania, 877 F.3d 487, 491-92 (3d Cir. 2017). In Fallon, the plaintiff alleged religious discrimination under Title VII due to his termination following a refusal to receive the influenza vaccine. Id. at 490. Plaintiff alleged that his sincerely held religious beliefs motivating his refusal included Buddhist teachings such as:

> Do not believe in anything simply because you have heard it. Do not believe in anything simply because it is spoken and rumored by many. Do not believe in anything merely on the authority of your teachers and elders . . . But after observation and analysis, when you find that anything agrees with reason and is conducive to the good and benefit of one and all, then accept it and live up to it . . .

Id. at 492. Further, the plaintiff believed that "one should not harm their [sic] own body and strongly believes that the flu vaccine may do more harm than good." Id. The court held that such beliefs were not religious in nature as they failed to satisfy any of the three parts of the Africa

13

inquiry. Id. The court found that plaintiff's concern that the vaccine would do more harm than good was medical in nature. See id. Further, the application of "one general moral commandment (which might be paraphrased as, 'Do not harm your own body')" was "an isolated moral teaching," not a comprehensive religious system. Id. Therefore, the court granted defendant's motion to dismiss. See id.

Here, at the motion to dismiss stage, Plaintiff has sufficiently pled that his beliefs are religious in nature. His beliefs that (1) the use of aborted fetal cells in vaccines is gravely wrong, and (2) his body is "God's temple" satisfy the three-part inquiry in Africa and are sufficiently religious in nature under Title VII to survive Defendant's Motion to Dismiss. In addition, while some of Plaintiff's stated reasons are philosophical, secular, or medical in nature, these reasons do not detract from Plaintiff's religious reasons which satisfy the first element of his prima facie religious discrimination claim.[8] See Leeck, No. 5:22-CV-4634, 2023 WL 4147223, at *7. The Court will next take each part of the inquiry in Africa in turn.

1. "Ultimate Ideas" Criterion

Here, the first criterion under Africa weighs in Plaintiff's favor. Plaintiff states that he believes that "all human beings are made in the image of God, and this idea affirms the unique

---

[8] For example, Plaintiff alleged that "he is being discriminated against because [he] refuse[s] to take an experimental vaccine." (Doc. No. 1 at 31.) In support of this contention, Plaintiff argues that "just as important, if not more, are my Constitutional rights as an American citizen, which affords me equal protection under the law according to the 14th Amendment." (Id. at 31.) Because Plaintiff suggests that other effective, yet unpublicized treatments for COVID-19 existed, he asserts that that "something else sinister is going on." (Id.) In addition, Plaintiff alleged that the vaccine is unnecessary because other treatments exist, such as Hydroxychloroquine, and the "low fatality rates" of COVID-19 mean that "there should be no need for anyone to worry about dying from the coronavirus." (Id. at 32.) These reasons are all medical or philosophical in nature. See Geerlings v. Tredyffrin/Easttown Sch. Dist., No. 21-CV-4024, 2021 WL 4399672, at *7 (E.D. Pa. Sept. 27, 2021) ("It takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious.").

value of all human life . . . I believe that abortion is gravely wrong at every stage . . . The Pfizer and Moderna COVID-19 vaccines in early development of mRNA vaccine technology used fetal cells for 'proof of concept' . . . ." (Id. at 4, 30-33.) As the United States Supreme Court has recognized, such beliefs concerning abortion "present[] a profound moral issue." Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 223 (2022). And here, Plaintiff's beliefs about being made in the image of God, the value of human life, and the morality of abortion "address fundamental and ultimate questions having to do with deep and imponderable matters." See Africa, 662 F.2d at 1032. In addition, Plaintiff's belief that "abortion is gravely wrong at every stage" because the Bible forbids murder deals with "life and death" and "right and wrong." See Leeck, 2023 WL 4147223, at *7. Thus, the first criterion under Africa weighs in favor of Plaintiff's beliefs being religious in nature.

2. "Comprehensiveness" Criterion

Second, the comprehensiveness inquiry also weighs in Plaintiff's favor. In Africa, the second criterion requires that a belief be "comprehensive in nature . . . consist[ing] of a belief-system as opposed to an isolated teaching." 662 F.2d at 1032. Just as the plaintiff's beliefs in Leeck about vaccination were "a part of her broader Christian beliefs," here Plaintiff has pled sufficient facts to show that his beliefs about the use of aborted fetal cells in the COVID-19 vaccine are a part of his broader Christian faith. Plaintiff alleges that he has been a practicing Christian for twenty years and remotely attends Church International. (Doc. No. 1 at 26, 30.) In addition, like the plaintiff in Leeck who supported his beliefs with references to scripture, Plaintiff provides Biblical verses[9] to support his belief that his body is "God's temple" and taking a vaccine which

---

9  Plaintiff provides the following Biblical texts to support his beliefs: "[t]he sixth commandment says 'You shall not murder' (Exodus 20:13) . . .  the New Testament teaches that: "Don't you know that you yourselves are Gods temple and that God's Spirit dwells in your mi[d]st?' (1

uses aborted fetal cells is morally wrong according to his faith. (Doc. No. 1 at 4.) Viewing such facts in the light most favorable to Plaintiff, he has sufficiently pled that his beliefs are "comprehensive in nature." See Africa, 662 F.2d at 1032.

### 3. "Structural Characteristics" Criterion

Finally, the third criterion under Africa—that the beliefs are exhibited through "formal and external signs"—weighs in favor of Plaintiff's beliefs being religious in nature. Viewing the facts in the light most favorable to Plaintiff, his beliefs about the use of aborted fetal cells, his body as "God's temple," and the COVID-19 vaccine are cohesive with his Christian faith. (See Doc. No. 1 at 4.) Plaintiff alleges that he is a practicing Christian who attends Church International. (See id. at 26.) He has "cited scripture and reasons beyond mere threadbare assertions" that demonstrate such beliefs are intrinsic to his faith. See Leeck, 2023 WL 4147223, at *7. Thus, for all the above reasons, Plaintiff's beliefs are sufficiently pled as religious in nature at this stage.

Therefore, viewing the facts in the light most favorable to Plaintiff, he has pled sufficient facts to satisfy each element of religious discrimination under Title VII. Accordingly, Defendant's Motion to Dismiss will be denied.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss will be denied. An appropriate Order follows.

---

Corinthians 3:16) 'If anyone destroys Gods temple, God will destroy that person; for God's temple is sacred, and you together are that temple.' (1 Corinthians 3:17)." (Doc. No. 1 at 4.)